***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and arguments of the parties. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Stephenson and enters the following Opinion and Award:
 *********** *Page 2 
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employment relationship existed between Defendant-Employer and Plaintiff on May 12, 2008.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. Plaintiff's average weekly wage on May 12, 2008, was $964.18, yielding a compensation rate of $642.82 per week.
5. By Form 60 dated July 3, 2008, Defendant-Carrier Utica National Insurance ("Defendant-Carrier Utica") accepted liability for a right shoulder injury suffered by Plaintiff in the course and scope of his employment with Defendant-Employer on May 12, 2008.
6. Defendant-Carrier Utica has provided necessary medical treatment to date and is paying total disability benefits of $642.82 per week.
7. By Form 61 dated September 3, 2008, Defendant-Carrier Star denied liability for the right shoulder injury suffered by Plaintiff on May 12, 2008, on the grounds that Plaintiff's injury did not result from an accident.
8. Utica National Insurance provided workers' compensation coverage for Employer John West Auto Services, Inc. through March 1, 2008. Star Insurance Company provided workers' compensation coverage beginning March 1, 2008, and continuing. *Page 3 
9. CONDITIONAL STIPULATION: Pending the outcome of the issue of whether Plaintiff experienced an accident on May 12, 2008, the parties stipulate that the incident of May 12, 2008, caused the shoulder injury that required surgical repair.
10. A package of Industrial Commission Forms, Motions and Orders are admitted into evidence as Stipulated Exhibit #2.
11. Plaintiff's medical records relating to this incident are admitted into evidence as Stipulated Exhibit #3.
12. Plaintiff's recorded statement with Defendant-Carrier Star is admitted into evidence as Stipulated Exhibit #4.
13. Defendant-Carrier Star's Responses to Defendant-Carrier Utica's Discovery Request is admitted into evidence as Stipulated Exhibit #5.
14. Issues to be determined for hearing involve what impact Utica's filing of a Form 60 has with respect to final disposition and compensability of the claim as it relates to both Utica and Defendant-Carrier Star; and whether Plaintiff sustained a compensable injury to his shoulder on May 12, 2008. Issues of reimbursement are raised by Defendant-Carrier Utica as well.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Born October 10, 1957, Plaintiff was fifty-one years of age on the date of hearing before Deputy Commissioner Stephenson. Plaintiff earned a high school diploma in 1978. Since that time he has received several certificates related to his profession of automobile mechanic. *Page 4 
Since he was 16, Plaintiff has never held any position but auto mechanic. He is right-hand dominant.
2. On May 12, 2008, Plaintiff was employed by Employer John West Auto Services ("John West Auto"), where he had worked as a major mechanic for approximately 17 years. A major mechanic does nearly all kinds of work on an automobile. As part of his duties, Plaintiff would rebuild engines, install and remove transmissions, perform electrical, suspension, and air conditioning work. The job required him to lift 80 to 100 pounds from the floor and up to 70 pounds overhead.
3. On May 12, 2008, Plaintiff was working on the timing belt of a Toyota Camry, trying to loosen one of the bolts holding the belt in place. To loosen such bolts, Plaintiff would use two tools. In his left hand he would hold a tool that he attached to the camshaft. In his right hand, he would hold a four-foot wrench; which was affixed to the bolt. Plaintiff would then pull the tool attached to the camshaft and push the wrench, this task was a normal part of his job with John West Auto.
4. The bolt that Plaintiff was trying to loosen on May 12, 2008, was extremely tight. A glue-like substance called Loctite had been used to secure the bolt, which was stuck as tightly as any bolt Plaintiff had ever worked on. On this occasion, Plaintiff had to push the bolt so hard that when it finally gave, his shoulder flew one way, his body went the other, and he lost his balance and fell against the car. At that moment, Plaintiff heard a loud pop and felt excruciating pain in his right shoulder.
5. This particular incident was different from any other time Plaintiff had attempted to loosen a tight bolt. He had never before lost his balance and fallen into a car. It was also unusual for his body to twist, i.e., his shoulder to go one way and his body the other, so violently. *Page 5 
Typically when a bolt Plaintiff is unscrewing comes loose, his right arm will move forward only 4-5 inches. In this instance, his right hand flew forward approximately two feet.
6. Plaintiff immediately reported the injury to his supervisor, John West. Plaintiff tried to continue working, but he was unable to do so and sought medical care that day.
7. Plaintiff was originally seen for his shoulder injury at NextCare Urgent Care in Garner on the date of injury. Because x-rays revealed a possible dislocation of the shoulder, Dr. Carl Reid referred him to Triangle Orthopaedic Associates. Plaintiff went directly to the night clinic at Triangle Orthopaedic, where he was evaluated by physician's assistant Tad Stichman. Mr. Stichman diagnosed a likely rotator cuff tear and ordered an MRI.
8. The MRI was taken on May 20, 2008, and revealed (1) a large, full-thickness tear of the entire supraspinatous tendon, with retraction, (2) a partial-thickness tear of the infraspinatous, and (3) arthrosis of the acromioclavicular joint.
9. Following the MRI, Plaintiff saw Dr. William Silver of Triangle Orthopaedics. Dr. Silver recommended an arthroscopic rotator cuff repair, biceps tenodesis, and subacromial decompression with distal clavicle excision. Dr. Silver performed the surgery at WakeMed North on June 18, 2008. On June 27, 2008, he referred Plaintiff to physical therapy at Rex Wellness in Garner.
10. Following a course of work conditioning at Job Ready Services, Plaintiff was discharged from the program on February 25, 2009. Upon his discharge, the therapist noted that Plaintiff gave maximum effort and determined that he is incapable of returning to his previous position at John West.
11. Dr. Silver declared Plaintiff at maximum medical improvement on March 25, 2009, and assigned a 15% PPI rating to the right upper extremity. Based on the work conditioning *Page 6 
evaluation, Dr. Silver assigned a permanent work restriction of no overhead lifting greater than 30 pounds.
12. Since being released to work by Dr. Silver, Plaintiff has looked for work. He has put together a sophisticated resume that he has provided to potential employers. As of the date of hearing before the Deputy Commissioner, Plaintiff had applied for over 20 jobs he believed to be within his restrictions, without receiving any offers of employment. He has also investigated additional positions but refrained from applying for them because the physical requirements exceeded his work restrictions. Plaintiff has utilized the Employment Security Commission to find a job, and he intends to continue looking for suitable employment.
13. The greater weight of the evidence is that Plaintiff remains disabled and is unable to work or earn wages as a result of his right shoulder injury on May 12, 2008.
14. Plaintiff filed a Form 18 on June 5, 2008; Defendant-Employer filed a Form 19 on August 14, 2008. Defendant Utica filed a Form 60 accepting Plaintiff's claim on July 3, 2008. Defendant Star filed a Form 61 denying Plaintiff's claim on September 3, 2008.
15. On October 30, 2008, Defendant Utica filed a Form 24 Application to Terminate Payment of Compensation with the Executive Secretary's Office on the grounds that Defendant Utica was not the carrier on the risk on the date of injury and Defendant Star was the carrier on the risk. Plaintiff responded on November 24, 2008. The parties participated in a telephone hearing on December 17, 2008. Defendant Utica's Form 24 application was disapproved by Administrative Order of Special Deputy Commissioner Jennifer S. Boyer dated December 29, 2008. The disapproval was based on lack of jurisdiction to consider a Form 24 filed on the grounds that Defendant Utica was not the proper carrier on the risk. Defendant Utica filed a Form 33 appealing this decision. *Page 7 
16. The parties participated in a mediated settlement conference on April 30, 2009, which ended in impasse.
17. The greater weight of the evidence is that Plaintiff sustained a compensable injury by accident to his right shoulder on May 12, 2008.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 12, 2008, Plaintiff sustained a compensable injury by accident to his right shoulder arising out of and in the course of his employment with Defendant John West Auto. N.C. Gen. Stat. §§ 97-2(6), 97-2(9), 97-29.
2. As a result of his compensable injury, Plaintiff is entitled to temporary total disability at his compensation rate of $642.82 per week from May 12, 2008, and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. The Form 24 application was appropriately denied by the Special Deputy Commissioner on jurisdictional grounds. N.C. Gen. Stat. § 97-18.1
4. Defendant Star is the proper party on the risk and is liable for Plaintiff's claim. Defendant Utica is entitled to be reimbursed by Defendant Star for those amounts, medical and indemnity, paid on behalf of Plaintiff's compensable claim. N.C. Gen. Stat. § 97-86.1(d).
5. The finding that Plaintiff sustained a compensable injury by accident to his right shoulder on May 12, 2008, and the stipulation that Defendant Star was the Carrier on the risk as of March 1, 2008, render the question as to whether Defendant Star is bound by the Form 60 filed by Defendant Utica moot. *Page 8 
6. Plaintiff is entitled to have Defendant Star pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, subject to the statute of limitations prescribed in N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-2(19).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Subject to the attorney's fee provided for hereinafter, Defendant Star shall pay Plaintiff temporary total disability compensation in the amount of $642.82 per week from May 12, 2008, and continuing until further order of the Commission. With respect to those amounts which have accrued and have been already paid by Defendant Utica, Defendant Star shall reimburse Defendant Utica those amounts.
2. Defendant Star shall pay all medical expenses incurred or to be incurred by Plaintiff as a result of the compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or may tend to lessen Plaintiff's period of disability, when bills for same have been submitted and approved by the Industrial Commission. With respect to those amounts in medical benefits which Defendant Utica has already paid, Defendant Star shall reimburse Defendant Utica for those amounts.
3. An attorney's fee of twenty-five percent (25%) of the accrued back payment of TTD is approved for Plaintiff's attorney. Thereafter, every fourth (4th) TTD check shall be made payable and forwarded to Plaintiff's attorney until further order of the Commission. Defendant Star shall reimburse Defendant Utica for any previous amounts paid as attorney's fees. *Page 9 
4. Defendant Star shall pay the costs.
This the 24th day of May, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR